Our next case is Cerna v. Denver Police Department. Okay. Good morning, your honors. May it please the court, my name is Daniel Pomerantz. I'm here on behalf of Mr. Francisco Cerna. Under your student practice rules, my supervising attorney, Professor Matthew Cushing, is sitting at the table and is able to supplement my presentation in any way if you'd like. Your honors, I'd like to request three minutes for rebuttal today. Welcome. Thank you. Your honors, today I'd like to discuss the 2018 Farm Bill, the important rights it creates in American farmers, and how those rights were violated with respect to Mr. Cerna. I'll dig into the text of the 2018 Farm Bill for you, but in order to understand that text, I'd like to start with why Congress passed specific provisions of the 2018 Farm Bill. Congress realized that it was missing a key market in the American economy. It was missing industrial hemp. Now, industrial hemp is a very versatile crop. It's used in everything from textiles to insulation. And American consumers had been importing industrial hemp for many years before Congress permitted farmers to grow it in this country. So in 2018, Congress recognized that it could capture that market, which is quite profitable, and also help struggling American farmers with a crop that fitted into their rotations. There was bipartisan support for this issue. There was testimony from then Senate Majority Leader Mitch McConnell on this issue, as well as Democrat Sean Tester from Montana. So Congress did three things to help protect American farmers in their pursuit of industrial hemp growing. First, it removed hemp from federal regulation of the Controlled Substances Act so that hemp could be grown in this country. Second, Congress created a system by which any farmer in any state or Indian tribe in the United States could grow hemp. So that's subtitle G of Title 10. And that subtitle mandated that states and Indian tribes set up programs under which farmers could compliantly grow hemp. And if they didn't do it, the Secretary of Agriculture would have to step in and do it for them. The whole idea being that any farmer anywhere in the United States should be able to grow hemp in a federally compliant manner. The third thing Congress did was it realized that just permitting farmers to grow hemp wasn't enough. Farmers would have to take those crops to market. And in doing so, they'd have to cross state lines a lot of the time. So Congress sought to protect farmers in that endeavor by passing Section 10114, which prohibited interference with interstate transport of hemp and allowed farmers to take those goods to market. Section 10114 was violated with respect to Mr. Cerna, and so I'll dig deeper into that. Wasn't sure you had a question yet. So Section 10114, the district court recognized that this section created a protected class of American hemp farmers who were transporting their goods in interstate commerce. Well, can I test that a little bit, Mr. Bumrus? What if it had been the DEA that had confiscated the interstate transportation of hemp? Would that have violated 10114B? Yes, Your Honor. I believe it would have, because it would have violated— It's not a state or tribal entity. Yes, Your Honor. It would have violated, excuse me, Section 10114A, which says that nothing in this chapter shall be read to permit the interference with interstate commerce of hemp. And, Your Honor, it would have violated Congress's decision to remove hemp from the Controlled Substances Act under Section 12619. And so this still would have been a violation of Mr. Cerna's constitutional rights, and he could have sought relief under the Farm Bill for that violation. But it wouldn't have violated 10114B. That's correct, Your Honor. And isn't your argument that 10114B creates a private cause of action? You're not invoking 10114A. That's right, Your Honor. And so this is where the distinction comes in between the DEA, which is a federal entity, and Officer Anselmo Jaramillo, who was acting pursuant to some authority, whether it was federal or state, we're unsure. So if the DEA, it may be acting ultra-virus, it may be violating, it may be exceeding the authorities under Title 18 of the Criminal Code, but if the DEA can confiscate the interstate transportation of hemp, that makes me question whether you're right that 10114B actually creates a protected class of hemp producers and hemp transporters. Maybe 10114A does, but not B. Your Honor, I don't know that we can separate these two sections, Section 10114A and 10114B, from each other. This is part of a larger idea in the entirety of Section 10114 to protect farmers who are transporting their crops in interstate commerce. 10114A does that with respect to federal action, and 10114B does that with respect to state action. In your brief, when you're talking about a private right of action, you tend to cite older Supreme Court decisions. And I understand, because they're better for you. But the law has evolved. And unlike in the Tenth Circuit, where our older cases govern, the more recent Supreme Court cases bind us. And Sandoval very clearly states that if the focus of the statute is on the regulated, rather than the individuals protected, there's no intent to confer a private right of action. I look at the statute, it nowhere mentions hemp farmers, licensed hemp producers. It talks about states and Indian tribes, the regulated entities. Why isn't the answer in Sandoval that there's no private right of action here? We don't even have to look beyond the plain language of the statute. We don't have to look at any legislative history. We can tell that this statute is written in a way that it does not create a private right of action. Yes, Your Honor. Sandoval was a fairly complex case. And one of the issues that Sandoval dealt with was how to interpret different sections of the Civil Rights Act. So Sandoval conceded that Section 601 of the Civil Rights Act contained a private right of action, implied private right of action. And we would analogize Section 10114 of the Farm Bill to Section 601 of the Civil Rights Act, which focuses on protecting a protected group of people, even though that reference is oblique in the Farm Bill. The focus is on protecting hemp farmers who are transporting their crops interstate, versus Section 602 of the Civil Rights Act was focused solely on authorities doing regulating. We would analogize that to Subtitle G of Title X of the Farm Bill. And we're not arguing that Subtitle G creates a private right of action. Only that Section 10114, which is provided to help hemp farmers transport their goods interstate, does so. Does it mention hemp farmers? No, Your Honor. And so you say it's oblique. Under Supreme Court authority, is oblique good enough today? It might have been good enough, you know, back in the 60s, maybe even the late 60s. But I think the tide turned. Yes, Your Honor. But Sandoval still says that in understanding the text, it's congressional intent that's determinative. And looking at the congressional intent here, the intent is to protect hemp farmers who are attempting to transport their goods interstate. Your Honors, I'd also like to turn, whether or not you agree with me about the private right of action. I hate to do this to you, Mr. Roberts, but can I circle back? Yes. And I want to follow up on your answer earlier about looking at 1014A. In your reply brief, I had understood you to be arguing the opposite. On the bottom of page 3, the analysis of whether a subsection of a statute creates a private right must start with the subsection first and not the statute as a whole, because it is common for one subsection of a statute to create a private right while another does not. So I had thought until this morning that you were arguing that we only look at 10114B to determine whether that creates legal rights for hemp producers, hemp transporters. So is your argument inconsistent today that we look at 10114A inconsistent with the position that you took in your reply brief? No, Your Honor, because section 10114B is the relevant subsection here because we're talking about state action. But section 10114, still a very small piece of a much broader statute, can be construed harmoniously as an attempt to protect hemp farmers who are transporting their hemp interstate. Section 10114A just protects them from federal action, and that's why we're not discussing that in our briefing. Now, Your Honors, I would like to turn to the issue of leave to amend, because that is also an important issue in this case. Mr. Cerna was not granted leave to amend his complaint before it was dismissed with prejudice. Your Honors, under Rule 15, leave to amend should be liberally granted when justice so requires. Justice does so require here. Mr. Cerna had constitutional rights that were violated by Officer Jaramillo, and his property was taken from him. It was unreasonably seized, and it was taken without just compensation. Well, in order to amend a complaint, there are procedures that need to be followed. And Mr. Cerna tried once, and the district court said no. And the district court took the time to explain to Mr. Cerna how you amend a complaint. And then, again, Mr. Cerna did not follow those procedures. He didn't file a freestanding motion to amend, and he didn't file a proposed amended complaint. So I have a hard time under an abuse of discretion standard saying that there was an abuse of discretion when, after being instructed on how to comply, Mr. Cerna made no effort to comply. Yes, Your Honor. As you're well aware, extra deference is granted to pro se plaintiffs who are unfamiliar with the rules. And even though the district court attempted to explain to Mr. Cerna how to properly amend his complaint, Mr. Cerna did still attempt to amend his complaint again, even though it was procedurally deficient. Liberal, not deference, but he should be granted some leeway in his failure to understand the rules of procedure. And the district court— How did he—can I interrupt? When you said he attempted to amend his complaint again after the district court spoke to him, what did he do to make that attempt is my question. Your Honor, it's in the Record on Appeal at page 116. He didn't file a motion. No, he did not, Your Honor. He didn't attach a complaint even, did he? No, Your Honor. This was part of a— When you say he made an attempt, I'm trying to discern what he did and whether it was anything that— Yes, Your Honor. This was part of a filing that Mr. Cerna had made. And at the end of his filing, he requests to amend his complaint to— It was, yeah, part of another filing. In his reply, Mr. Cerna replied objecting to the R&R. Right. Yes, Your Honor, that's correct. And where he says, under 1983, for constitutional and common law rights, correct? That's right, Your Honor. But the problem that I had— No, no, go ahead. I didn't understand if I was the district judge reviewing that objection, I would think, okay, what constitutional right? Now, you make wonderful arguments, honestly, in your brief, the Fourth Amendment, the Fifth Amendment. But if I was a district judge, even liberally construing that objection, I'm not sure that I would have had the foresight, unless I was just, you know, involved myself in rule of advocacy, to say, okay, well, he hadn't told me what common law or constitutional right, but it may have been the Fourth Amendment, may have been the Fifth Amendment. That seems unfair. Your Honor, Mr. Cerna did allege that he could have brought a claim under Section 1983. And I'm fleshing out his argument today. But he did put the court and the appellees on notice that he could have brought that claim under Section 1983. That's why we'd argue he should have been given leave to amend. Well, he made it in—I'm looking at what he said. It's two sentences. And it's in the middle, as they said, in a serve reply to the objections to the report and recommendation of the magistrate. And there's not a lot of meat on the bones here in what he threw out. And what the district court told him is, when we look at a motion to amend your complaint, we want the proposed actual allegations in the proposed amended complaint, because there are things that the court has to do, including determining whether it would be futile to allow him to amend. That's hard to do from a vague statement about what I might allege. That's certainly true, Your Honor. But Mr. Cerna did allege the 1983 action. And in looking at whether amendment would be futile, the district court looked only at the 2018 Farm Bill and whether Mr. Cerna could state a private—could have a private right of action. Well, there's not a freestanding right under Section 1983. It's just a vehicle through which you can bring—you can enforce a right that is established somewhere else. So if there's no private right of action under the Farm Bill, you can't bring a 1983 action to create a private right of action under the Farm Bill. Would you agree with that? Absolutely, Your Honor. So they stand or fall together? I don't agree with that, Your Honor. I believe that Mr. Cerna could have brought a separate—a related but separate claim under 1983 for violations of his constitutional rights, which is what he attempted to do. I'll reserve the remaining 25 seconds for rebuttal. Your Honor, do you mind if I give him a total of three minutes? No. Is that okay? If I give him a total of three minutes? Okay. Mr. Pomerantz, I inadvertently cheated you out of your three minutes. You told me it's a start. And I got carried away listening to your argument and didn't give you three minutes. So you are hereby bestowed three minutes. You, too, have three minutes of nothing if not fair. That said, you will not be held in contempt if you do not elect to use your additional three minutes. But I'm not sure he treats practicing attorneys equally to law students. Fair enough. I'll take that all into consideration. May it please the Court, I'm Assistant City Attorney Connor Farley here on behalf of appellees from the Denver Police Department and Officer Jaramillo. Appellant has asked for extraordinary relief. A judicially created private right of action arising out of federal legislation that, one, does not include such a right or a remedy on its face, two, has a legislative history that shows a private enforcement remedy was expressly considered and rejected by Congress, and three, has no other indication of statutory intent to create a private right of action within the regulatory framework of the statute to meet the goals of that legislation. Let me interrupt you for one minute. The district courts found that there was a private right, but there was no private remedy. And as I read the cases, if there's a private right, there's a presumption of a private remedy. Now, the presumption can be overcome, but it comes with a presumption of a private remedy. Would you agree at least with that framework? I don't agree with that framework exactly. I think that under Sandoval, there's a two-step process. There is, is there a private right? Right. And if there is not, the analysis stops there. That's what the magistrate found. And the magistrate's recommendation found no private right. The district court found a private right without any specific analysis. So I think in the de novo review here that we can stop at the first step on the statutory, whether there's a right. If we don't stop there, then we do have to move on to the second step of whether there's a private remedy. And the language from Sandoval is the judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right, but also a private remedy. And so I don't think that in the current framework of the, of how we look for an implied right, that we can just find right, therefore there must be some remedy. If Congress, who evaluated all the factors that Congress evaluates in passing legislation, found yes, right, but no specific intent for a private remedy, that is irrespective. And so that's where I think that analysis comes down. Does that answer the question? Yes, although, I mean, I do think there's a presumption once you have a right that there's a remedy, but that it can be overcome, for example, if there's another way to vindicate the right that's provided by law. I think that under court fiasco, I think that the prior framework for this analysis gave more of a, more consideration to that, that you have to, if there's a remedy, then we're going to look at all these other factors. But now it is, it is not, you can't place the right, the remedy doesn't come from the right. And so here, in this case, is a very good example of when, even if, as the district court found, and as an appellant has argued, even if there was to be a right, when you look at the clear statutory intent, there is no remedy. And that's the standard. The standard is clear statutory intent. But you don't concede there's a right. I do not concede that there's a right. I think that, in fact, I think there is no right afforded to hemp farmers specifically or anything more than a variety of additional beneficiaries that are beneficiaries of the act. So I'll walk through appellant's primary arguments in turn. Before you do that, can I ask you about something that really puzzled me? It was a statement, okay, you just explained, Judge McHugh and the rest of us, that you are not questioning, I mean, that you are certainly disputing a legal right. But you said something in district court that was quoted by Mr. Pomerantz and Mr. Cushing in the reply brief. And it says, and it was a reply to the objection of the R&R, defendants do not dispute that the 2018 Farm Bill created a legal right for hemp producers like Mr. Cerna to transport hemp across state lines so long as federal and state or tribal regulatory requirements are met. Well, what did you mean if you were conceding that it created a legal right? I think that that provision, 10114B, precludes affirmative steps by the state to preclude interstate transportation. It is not a right, in the way that it's reviewed under the rights-creating language, I think that there is not a, it doesn't explicitly identify hemp farmers as a protected class, that hemp may be transported across state lines. That is unquestionable from the face of the language, from just, the scheme allows this. And so it is not that hemp farmers are the specific beneficiary of that language. It is, I think it's primarily states that are the beneficiary of interstate transportation of hemp, but I think that it is also fairly hemp product manufacturers, hemp product sellers, hemp product users, shipping companies, anybody involved in interstate commerce is going to be a beneficiary. And the requirement to find, under the sand of all analysis, is that the rights-creating language has to have a specific beneficiary. That is not hemp farmers. Well, you're saying, when you say specific, I didn't understand that word in the context of the rest of your answer. If you had said express, then I would have understood it. But it seemed like everything else that you just said was that 10.1.1.4.B. does specifically create a right for hemp producers and hemp transporters. It didn't expressly do it, but it indisputably did. The beneficiary has to be a, or the protected class, is in a special benefit directly to that right holder. And so a general right to interstate transportation of hemp does not then create the type of rights, it's not the rights-creating language for an implied remedy analysis. And so the first step is not met by just a generalized right to hemp to be allowed to cross state lines. What if the 2019 Farm Bill said, no federal, state, local, tribal, or any other public entity shall interfere with a hemp producer or hemp transporter's inherent right to transport hemp across state lines? Is that focusing on the regulated entity, any public entity, or does that cross the line to create rights for purposes of Sandoval? It certainly gets closer than what the actual statute does. But I think that it has to be viewed in the context of the entire framework of the act, of the statute. And so because you're looking at an act that regulates, that is intended for states to regulate hemp, carving out a specific beneficiary in that way is in contrast to what the totality of the statute creates. The statute creates a regulatory scheme for states and Indian tribes. I would like to turn to two remaining issues. First being the legislative history here. It is undisputed that the primary issue is to find out what the intent of Congress was. The language of the statute is enough. But you said it was whether or not it was to create, whether it expressly created a right. So is it a broader inquiry that we really do look at congressional intent as opposed to expressly stating the intent? Understandable. The requirement is clear statutory intent to create a private right of action. And so if that cause of action does not exist, the courts may not create one, even if it's desirable as a policy matter or it's compatible with the statute. So it is clear statutory intent to create an individualized right. And understand of all, if we can tell from the face of the statute, we wouldn't even look at legislative history. Is that right? That's correct. So you want to talk about legislative history as a belt and suspenders? Exactly. Because in the circumstances here, the single most clear reflection of what the intent was, to the extent that it's unclear from the language, the statutory claim closes, the legislative history, it closes that. We know that the legislative history is the most persuasive indication of legislative intent. And there's a series of cases in the answer brief at page 29 through 30, where no private right of action when it looks at legislative history. And here we know that the House bill provided a private right of action, the Senate amendment contained no comparable provision, and the conference substitute in reconciliation does not adopt the House provision. In Ziegler, the Supreme Court instructed judicial restraint under these circumstances, that when a party seeks to assert an implied cause of action under a federal statute, separation of powers, principles, or should be central to the analysis. So the question is, who should decide whether to provide this remedy, Congress or the courts? And the answer most often will be Congress. I do want to turn to the ability to amend. Judge McHugh walked through the history, but there's even more. We know that in March of 2021, Mr. Cerna filed a Rule 15a pleading. That was stricken without prejudice to a compliant refiling in April of 2021. In response to the motion to dismiss in May of 2021, Mr. Cerna had ability under Rule 15a1b to amend as a matter of right before the motion is ruled on. This is because the motion to dismiss alerted Mr. Cerna to the specific deficiencies in his complaint, and he failed to do this. In June, in response to the magistrate's recommendation, he could have filed a motion under Rule 15a2 with leave freely given to amend, and he failed to do this. As we walked through earlier, in response to the order adopting the magistrate's recommendation, there's a single line that provided no notice as to what the actual claims or the factual underpinnings of it would be. And he still could have, even after that order was adopted, he could have filed a Rule 59 or a Rule 60 motion in order to amend the complaint there. Well, liberally construing what he said to the district judge that he would have a right under 1983, and given the fact that this is a pro se claimant, couldn't the district judge have reasonably interpreted that statement to say, okay, well, 10114B doesn't create a private right of action, but 42 U.S.C. 1983 does. And 1983 encompasses both statutory and constitutional rights, and so his obvious intent was to claim a violation of 1983 with all of the same underlying substantive arguments that he had. What's wrong with that? And why wouldn't that have been obvious to the district judge? It's not obvious to me, and I don't know that whether he was intending it. I read that language as indicating that he's intending to file something like a Fourth Amendment claim, a seizure, or as the briefing has stated, a Fifth Amendment takings claim, that once there's no right of action under the Farm Bill, as Judge McHugh addressed earlier, there's nothing for a 1983 claim to attach to. So the Farm Bill, if it doesn't provide a private right of action, then it wouldn't facilitate a 1983 case. And in order to, and I apologize for running over, in order to assert a Fourth Amendment claim in this case, the facts in the complaint are certainly not robust enough to identify what that is. And he was specifically instructed how to do it, file a proposed amended complaint with strike-throughs compliant with local rule 15.1, and he just failed to do it. And so in order for an amended action to happen, it would have really taken an advocacy position of the district court that just isn't permitted in the Tenth Circuit. All right, thank you. We'll hear from Mr. Pomerantz. You have three minutes. Thank you, Your Honors. I'd just like to make two brief points in rebuttal. The first on the legislative history, the proposed but rejected private right of action dealt with only regulatory enactments, only state regulations. As we've been discussing here today, Section 10.114B and 10.114A together should be interpreted to be a freestanding provision that isn't about the regulators but actually about people who are being affected by the regulations who are the farmers. And so it creates a private right for them. The second point, Your Honors, is on the leave to amend. So the fact that Mr. Cerna was attempting to amend his complaint shows that it was obvious that he thought he had a complaint under 1983, and we're fleshing that out today. But Mr. Cerna would be significantly harmed if he were not able to amend his complaint. So there are claim preclusive issues at work here, Your Honors, and if he's not given leave to amend, his case is going to – he won't be able to refile, and his rights will have been violated, and he'll have no way to vindicate them. Furthermore, Your Honors, there's the issue of the statute of limitations. Although as of today, we're about 18 months from the point where these events took place, by the time Your Honors fully consider this issue and issue a ruling, we could well be past that two-year statute of limitations point. So if Mr. Cerna's not given leave to amend, he's going to lose his only opportunity to vindicate his constitutional rights, which, as Your Honor pointed out, it was obvious that he was attempting to do by amending – advocating a 1983 cause of action. Thank you. Thank you. This matter will be submitted.